# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DIANNA FAYE STARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:13-cv-00496 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Brown |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Dianna Faye Stark's Motion for Judgment on the Administrative Record ("Motion"). (Doc. No. 10.) On May 20, 2014, Magistrate Judge Brown issued a Report and Recommendation ("Report") recommending that Stark's Motion be denied and the decision of the Social Security Administration be affirmed. (Doc. No. 19 at 17.) On June 3, 2014, Stark filed Objections to the Report (Doc. No. 21), to which the Commissioner did not respond. For the reasons stated below, the Court **ADOPTS** the Magistrate Judge's Report (Doc. No. 19) as modified below and **DENIES** Stark's Motion (Doc. No. 10). The Clerk of the Court is **DIRECTED** to close the case.

## I. STANDARD OF REVIEW[1]

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act

---

[1] The Court adopts Magistrate Judge Brown's summary of the facts and procedural posture of this case (Doc. No. 19 at 1–9) and refers to the facts below only as necessary to facilitate evaluation of Stark's Motion.

1

provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the Administrative Law Judge's ("ALJ") decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## II.  STARK'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Stark objects to the Magistrate Judge's Report on the following grounds: (1) Stark has a listed impairment, thus the ALJ erred in finding otherwise; (2) the ALJ improperly weighed the opinions of treating physicians Dr. David Haynes and Dr. Roy Reynolds; (3) the ALJ improperly

2

discounted Stark's credibility, and (4) the ALJ improperly relied on Vocational Expert ("VE") testimony given in response to a hypothetical that does not reflect Stark's true residual functional capacity ("RFC"). The Court considers each objection in turn.

*A. Listing 2.07*

Stark contends she has listing-level Ménière's disease, thus the ALJ's conclusion that she did not meet the listing was not supported by substantial evidence, and the Magistrate Judge erred in finding she did not meet the listing. Listing 2.07, "*Disturbance of labyrinthine-vestibular function* (Including Ménière's disease)," is "characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing" with both of the following: (A) "Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and" (B) "Hearing loss established by audiometry." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07. Stark must also demonstrate "that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987) (quoting 20 C.F.R. § 404.1525(c)(4)). Because Stark seeks Disability Insurance Benefits only, she must show she met the requirements of the listing "prior to the expiration of her insured status." *Moon v. Sullivan*, 923 F.3d 1175, 1182 (6th Cir. 1990). Stark's date last insured is December 31, 2005. (Tr. 22.)[2]

The ALJ found Stark "does not have a mental or physical impairment which meets or equals the requirements of any section of Appendix 1." (Tr. 22.) In her analysis of Stark's RFC, the ALJ explained that Stark had surgery in 2000, but reported to her treating physician in September 2001 and October 2003 that she "had suffered no further attacks . . . [of] disequilibrium." (Tr. 24.) Furthermore,

---

[2] The Administrative Record is available electronically at Docket Number 4.

> The record reflects the claimant did not return to Dr. Haynes[, her treating physician] until September 2006, at which time she reported her Meniere's symptoms were beginning to return, particularly since the springtime. However, Dr. Haynes noted the claimant reported her current symptoms consisted mostly of unsteadiness with no discrete attacks. The undersigned notes that the claimant's date last insured was December 31, 2005, prior to the time the claimant reported an increase in her symptoms.

(*Id.*) Upon review of the record, the Magistrate Judge found the ALJ's conclusion was supported by substantial evidence because Listing 2.07 requires Stark to show "frequent attacks of balance disturbance," but "the record is devoid of evidence substantiating the presence of even one episode of balance disturbance between 2000 and 2006." (Doc. No. 19 at 12.)

The Court concurs with the Magistrate Judge's assessment: Stark presents no objective evidence of frequent balance disturbance between her April 2000 surgery and September 2006. In her Objections, Stark contends Dr. Haynes and Dr. Reynolds' medical records establish she meets this requirement of the listing, but Stark points to no specific documentation of her balance disturbances except records that do not pertain to the relevant time period. (Doc. No. 21 at 10; *see id.* at 2–3.) Stark also contends the hearing testimony proves she meets the listing. (*Id.* at 10–11.) Stark testified her condition deteriorated in 2004, with two to four attacks of vertigo occurring every two to three weeks (Tr. 48–49), and her business partner testified that in 2004 Stark worked at most two days per week due to her condition (Tr. 60). However, evaluating the claimant's credibility is the ALJ's prerogative, and as discussed below, the ALJ did not err in discounting Stark's credibility.

Although the record may show Stark currently suffers from listing-level Ménière's disease, the ALJ's conclusion that Stark did not meet the requirements of the listing before her date last insured is supported by substantial evidence. Accordingly, the Magistrate Judge's conclusion on this point is **ADOPTED** and Stark's Motion **DENIED**.

4

*B. Treating Physicians*

Stark next argues the ALJ erred in giving "little weight" to the medical opinions of Dr. Haynes, dated June 1, 2011 (Tr. 325), and Dr. Reynolds, dated November 29, 2010 (Tr. 279), because Drs. Haynes and Reynolds are treating sources. (*See* Doc. No. 21 at 11–16.) Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013), *reh'g denied* (May 2, 2013). Here Drs. Haynes and Reynolds are both physicians, have provided Stark with medical treatment and evaluation, and have ongoing treatment relationships with Stark. (*See* Tr. 232–274, 279, 280–322, 325, 393–99, 400–04.) Both doctors are treating sources.

Treating source medical opinions are entitled to controlling weight if the following conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007). If the treating source's medical opinion is not entitled to controlling weight, the ALJ must determine the appropriate weight to accord the opinion upon consideration of the following factors: "the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

If the ALJ does not give a treating source's opinion controlling weight, she must give "good reasons" that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Id.* (internal citations omitted). Conclusory or vague reasoning will not do. The ALJ must make "some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010). A failure to give good reasons "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and, unless the failure is harmless error, requires remand. *Id.* at 551 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)).

Stark challenges the ALJ's assessment of a letter from Dr. Reynolds, dated November 29, 2010, in which Dr. Reynolds explained "[e]ver since I have known [Stark in 1998] she has had [sic] experienced unusually severe vertigo which thus far has never resolved in any meaningful way" and that Stark's vertigo is "disabling." (Tr. 279.) The ALJ assigned this opinion "[l]ittle weight" because it is inconsistent with the other substantial evidence in the record. Specifically, the ALJ found Dr. Reynolds' opinions "inconsistent with [his] treatment notes, the medical evidence as a whole, and appear to be based on events that happened many years after the date last insured." (Tr. 26.) The ALJ explained Dr. Reynolds' treatment records "do not reveal reports of disabling symptoms during the relevant time period" (Tr. 25), nor do Dr. Haynes' records, which show Stark reported an increase in her symptoms starting in the spring of 2006 (Tr. 24).

Stark contends Dr. Reynolds' opinion is supported by his treatment notes, and in her Objections she states Dr. Reynolds' "records are hard to read; therefore, the undersigned telephoned Dr. Reynolds' assistant, Judy, and she provided a clear reading of his records, based

on her sixteen (16) years of working with him." (Doc. No. 21 at 12.) Even if this information—facts absent from the record and asserted as hearsay for the first time before this Court in a party's brief—were considered as evidence, it would not advance Stark's position. The records as allegedly deciphered by Dr. Reynolds' assistant show that between Stark's April 2000 surgery and April 2005, Stark complained of fatigue three times, but that the fatigue may have been "associated with weight," vomiting and nausea once, and a "problem with her left ear surgery" once. (Doc. No. 21 at 12–13.) These records are inconsistent with Dr. Reynolds' opinion that Stark had disabling vertigo before her date last insured. The Court agrees that Dr. Reynolds' 2010 opinion is inconsistent with the substantial evidence in the record showing Stark was not suffering attacks of vertigo between her surgery in 2000 and the spring of 2006, and therefore that Dr. Reynolds' opinion was not entitled to controlling weight.

The ALJ also addressed a number of the regulatory factors before deciding Dr. Reynolds' opinion was entitled to little weight. For instance, the ALJ noted Dr. Reynolds is not a specialist, but "the claimant's primary care physician," who saw Stark "once in 2001, once in 2002, zero times in 2003, and once in 2004," and that "[t]his frequency of treatment reflects stable medical conditions, and [is] inconsistent with the claimant's testimony of disabling vertigo and nausea numerous times a week for years at a time." (Tr. 25.) These observations, and the ALJ's assessment that Dr. Reynolds' opinion is inconsistent with his own treatment records and the other evidence from the relevant time period, are supported by substantial evidence. The Court finds the ALJ properly applied the treating source rule to Dr. Reynolds' opinion and the ALJ's decision to allocate little weight to the opinion is supported by substantial evidence.

Stark contends "it is clearly erroneous to give 'little weight' to Dr. David Haynes' letter [of June 1, 2011,] because it is consistent with the medical records of Dr. Roy Reynolds." (Doc.

No. 21 at 11.) However, contrary to Stark's assertion, the ALJ did not give "little weight" to the 2011 letter, but failed to address the letter at all. The ALJ explained she gave "[l]ittle weight" to Dr. Haynes' opinions "dated March 2012," but did not mention the opinion now at issue. (Tr. 26.) The ALJ must address all treating source medical opinions, and failure to do so indicates a lack of substantial evidence that is grounds for reversal unless the failure is harmless error. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007) (harmless error analysis applies where ALJ ignores treating source opinion as long as the Decision shows the ALJ "intended to indirectly attack it"). A failure to apply the treating source rule may be harmless error where "the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. Here the Court finds the ALJ's failure to mention the 2011 opinion is harmless error because the ALJ's reasons for rejecting Dr. Haynes' 2012 opinion apply with equal force to the 2011 opinion.

The ALJ's finding that Dr. Haynes' 2012 opinion was not entitled to controlling weight because it is inconsistent with other substantial evidence in the case record is supported by substantial evidence. Specifically, the ALJ found Dr. Haynes' 2012 opinions "are inconsistent with the medical evidence of record, including Dr. Haynes own treatment notes and prior opinions, and appear to be based on events that happened many years after the date last insured." (Tr. 26.) As explained by the ALJ, Stark reported to Dr. Haynes that she started experiencing symptoms again in the spring of 2006, long after her date last insured. (Tr. 24.) Furthermore, Dr. Reynolds' treatment records do not indicate Stark reported disabling symptoms before her date last insured. The only other medical evidence in the record, opinions from agency medical consultants, also indicate Stark's condition was "non-severe in nature from the alleged onset date

to the date last insured." (Tr. 26.) Furthermore, the ALJ applied the good reasons requirement and explained why Dr. Haynes' opinion was entitled to little weight for the time period at issue. In addition to describing medical records contrary to Dr. Haynes' opinion showing Stark did not complain about vertigo or related symptoms until 2006, the ALJ also noted that "Dr. Haynes is a specialist, and that it is reasonable the claimant may not have had access to frequent office visits," but that Dr. Haynes' records showing no symptoms for years after the procedure were consistent with the limited findings of Dr. Reynolds. (Tr. 25.) The Court finds the ALJ's decision to afford little weight to Dr. Haynes' 2012 opinion is supported by substantial evidence.

The Court also finds the ALJ's reasoning as to the 2012 opinion applies equally to Dr. Reynolds' 2011 opinion. The letter of June 1, 2011, explains that Stark "has a history of Meniere's disease and has undergone an extensive and protracted course," but she has "protracted imbalance" and "would not be able to perform regular employment given the variability of her disequilibrium with associated fatigue." (Tr. 325.) The letter of March 20, 2012, explains that Stark "has a history of chronic Meniere's disease" and has "suffered with intermittent disequilibrium and constant fatigue since 2000" and is therefore "unable to hold a permanent job in the workforce." (Tr. 394.) The 2011 letter is substantially similar to the 2012 letter addressed by the ALJ, provides little additional information about Stark's condition, and like the 2012 letter, any opinion contained within that relates to Stark's condition as of her date last insured is unsupported by the substantial evidence in the record.

The ALJ's decision to give little weight to Dr. Haynes' opinion was supported by substantial evidence, and her failure to mention the 2011 opinion was harmless error. Accordingly, the Magistrate Judge's Report on this point is **ADOPTED** as modified above, and Stark's Motion **DENIED**.

*C. Credibility*

According to Stark, the ALJ's finding that Stark "is 'not entirely credible' is wrong and clearly erroneous." (Doc. No. 21 at 16 (quoting Doc. No. 19 at 15) (internal citation omitted).) The Magistrate Judge determined that, "as the ALJ found, there is no objective medical evidence in the record to support Plaintiff's claims regarding the intensity, persistence, or functionally limiting effects of her symptoms. However, the record does support the ALJ's reasoning that Plaintiff would have reported the chronic symptoms to her physicians and would have sought treatment on a more frequent basis" if her symptoms were as severe as reported in her hearing testimony. (Doc. No. 19 at 15 (internal citation and quotation omitted).) In her Objections, Stark contends this finding is incorrect because "[t]here is sufficient medical proof of the severity of the Plaintiff's Meniere's disease with dizziness and fatigue." (Doc. No. 21 at 17.) However, as described at length above, there is no proof in the record of the severity of Stark's condition during the relevant time period. Upon review of the record, the Court agrees in full with the Magistrate Judge's reasoning and finds the ALJ's credibility determination was supported by substantial evidence. The Magistrate Judge's Report on this point is **ADOPTED** and Stark's Motion **DENIED**.

*D. Vocational Expert Testimony*

Finally, Stark contends the ALJ erred by relying on Vocational Expert testimony given in response to a hypothetical RFC assessment that overestimated her abilities. Specifically, Stark contends "[t]he evidence is clear and undisputed that the Minere's [sic] disease between 2000 and 12-30-2004 had progressed to the point that the Plaintiff was missing two (2) and three (3) days every two (2) or three (3) weeks," but the hypothetical relied on by the ALJ did not include such a restriction. (Doc. No. 21 at 19.) However, as discussed at length above, the ALJ's RFC

10

assessment was not erroneous because there is no objective medical evidence in the record that Stark was required to miss so many days of work due to her Ménière's disease during the relevant time period, and the ALJ's decision to discount Stark's testimony to the contrary was supported by substantial evidence. Accordingly, this objection is meritless, the Magistrate Judge's Report on this point is **ADOPTED**, and Stark's Motion **DENIED**.

**III.** CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report (Doc. No. 19) as modified above and **DENIES** Stark's Motion (Doc. No. 10). The Clerk of the Court is **DIRECTED** to close this case.

It is so ORDERED.

Entered this the __11th___ day of September, 2015.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT